17 So.2d 133

**PIEDMONT FIRE INS. CO. v. TIERCE.**

**6 Div. 138.**

Supreme Court of Alabama.

Jan. 13, 1944.

Rehearing Denied March 23, 1944.

Mead, Moebes & Moloney, of Birmingham, for appellant.

416

Reuben H. Wright, of Tuscaloosa, for appellee.

THOMAS, Justice.

The action was based on a fire insurance policy. The assignments of error are conveniently grouped by counsel. The action was on a policy of fire insurance for the recovery of the loss or damage to a building and certain personal property located therein, the policy insuring such building "while occupied by owner as store and dwelling." The complaint contained one count in code form. Demurrer to the complaint was overruled and thereupon appellant filed pleas 1 through 21. Such pleas were in substance the general issue and special pleas to the effect that the building at the time of the alleged fire was not occupied as a store and dwelling, but as a dance hall and was not within the coverage of the policy; that the building at the time of the alleged fire was occupied as a dance hall and the risk and hazard of loss under said policy was thereby increased by means within the control or knowledge of the insured.

Appellee filed demurrer to these pleas. Demurrer was sustained as to pleas 5, 7, 10, 13, 14 and 20, and overruled as to the remainder. Appellee thereupon filed replications A through G. Appellant filed demurrer to these replications. Demurrer was overruled insofar as such replications applied to pleas 16 and 21 and sustained insofar as to the remaining pleas. Appellee thereupon filed the general issue to appellant's pleas to which replication had been held bad on demurrer and appellant filed rejoinder to appellee's replications with respect to which demurrer had been overruled. Appellee then filed the general issue to appellant's rejoinder.

Appellant's counsel concisely states the issues in this case raised by the respective pleadings of defendant, as follows:

"(1). Appellant's pleas that the building was being used principally or generally as a dance hall, and the general issue filed by appellee to such pleas.

"(2). Appellant's pleas that the hazard or risk of loss was increased by the use of the building as a dance hall; Appellee's replications setting up waiver or estoppel; Appellant's rejoinder to such replications; and the general issue to such rejoinder."

From the respective pleadings the following issues, upon which the cause was tried, arose: (1) Was the building in question being occupied at the time of the alleged fire as a dance hall within the inhibitions of the policy? (2) Was such use merely incidental to the principal or general uses of the building? (3) Was the use as a dance hall a general or principal use or merely incidental to the occupancy as a store and dwelling? (4) Was such use as a dance hall waived by appellant?

Such was the theory upon which the case was tried. It is shown by the court's action in sustaining demurrer to appellee's replications setting up waiver or estoppel in answer to appellant's pleas that the building was used and occupied as a dance hall; and in overruling the demurrer to appellee's replications insofar as they applied to appellant's pleas setting up increased hazard or risk of loss by virtue of use as a dance hall. In the oral charge the court instructed the jury that the policy was coverage on the building while it was occupied as a "dwelling and a store"; that it was necessary to determine whether it was anything more than a dwelling and a store within the terms of the policy contract; that it was for the jury to determine whether there was any other occupancy and to what extent; whether the other occupancy was a principal use or merely incidental, a minor part of such occupancy; whether it was occupied principally as a home and·store, dancing being only incidental; and if defendant's agent knew of such occupancy and issued the policy and received premiums, the question of waiver would be for the jury.

In its oral charge the court said: "If the dancing were *only incidental* and the honky tonk and other occupancy set out in the pleas *merely increased the risk of loss*,—if that was the only effect and if the building was used as a dwelling and store, then, of course, the defendant could waive it. In other words, if the defendant did what the plaintiff claims he did, then, that would *be a waiver* of *the incidental use as for dancing and for other acts* that are set out in the pleading by the defendant. * * *." [Italics supplied.]

After charging the jury orally with respect to waiver of an incidental use of the building for dancing the court, at the *request of appellant*, gave special written charges numbered from 16 to 18, inclusive, 21, 25, A and C. The charges are to the effect that if a principal or general use of the subject of the insurance at the time of the fire was that of a dance hall, the appellee could not recover for the loss or destruction of the building.

Appellant's counsel correctly stated the issue of facts as follows:

"1. Whether the use of the building as a dance hall was a principal or general use, and if the jury determined such use was a principal or general use, then it was instructed that the verdict could not ·include any damages for the loss or destruction of the building;

"2. Whether the use of the building as a dance hall was merely an incidental use ánd if so, whether such incidental use was waived by the appellant."

On these issues the jury found for the plaintiff, the judgment being for $2,550.

We look to the evidence for the facts on which the verdict of the jury rested. The policy of insurance was issued to appellee, Mims Tierce, insuring a one-story frame building with composition roof, "while occupied by owner as store and dwelling." The building was owned by appellee Mims Tierce and was located on the Talladega-Childersburg Highway in Talladega County, Alabama. Appellee, his wife and their child lived in the building and operated some sort of a store therein. The building was located 14 or 15 miles from Talladega and approximately three and one-half or four miles from Childersburg.

Prior to moving into the building in question, appellee operated and managed a dime-a-dance place in or near Childersburg for a Mr. Reed and a Mr. Avery. Appellee and his wife owned the store part of that dime-a-dance establishment. This

dime-a-dance establishment closed down and appellee moved into the building, the subject of this suit.

Upon completion of the construction of the building appellee procured a state and county license for a dance hall and the store and dance hall end of his establishment was managed by his wife. The store operations consisted of dealing in edible package goods such as cakes, candies, ice cream, pies, sandwiches, soft drinks, cigarettes, tobacco and other package goods.

At the time of the fire, appellee was employing four girls who lived on the premises and occupied two of the bedrooms. These girls were employed to wait on trade and to dance with customers. Music was furnished by a rockola. Appellee's wife likewise ran the dance hall end of the business.

A diagram of the house was in evidence. The outside dimensions of the building were 46' by 64' and the main room of the building was 32' by 32'. This room had booths down one side, such booths extending out about five feet into the room. On the other side were ordinary benches against the wall. This room was used for eating and dancing. In the operation of the dance hall, tickets were sold for dances and the charge therefor was ten cents a dance. Couples would dance or men would come unaccompanied and dance with the girls employed by appellee. Appellee's wife sold the tickets at ten cents a piece, generally being purchased in blocks of eight to ten. Appellee's wife collected the money for the tickets; the girls employed collected the tickets and each girl received four and one-half cents out of the ten cents, for each dance ticket, and appellee received five and one-half cents for each ten cent ticket. In addition to this compensation, the girls were given their room and board and such tips as they might receive from customers. Appellee's income of five and one-half cents out of each ticket was sufficient to pay the board which ran from six to ten dollars a week per girl. Music was furnished by a rockola which took in about $115 a month at the rate of a nickel for each record played. There was dancing going on in the place and couples were allowed to dance at all times up to the hour of closing as they saw fit. The establishment stayed open until one o'clock A. M. on week nights and on Friday, Saturday and Sunday nights until two o'clock A. M. The plaintiff's evidence showed that dancing did not go on every night and he never saw dancing more than half a dozen couples at one time and on cross examination said dancing went on practically every night; that dancing was done and was going on when defendant's agent came to that place before the issuance of the policy of insurance.

The foregoing constitutes a summary statement of the evidence with respect to the use of the premises in question as a dance hall and constitutes a statement of evidence pertinent to the issues raised.

Charge "A" was given at defendant's request. It reads as follows: "(A) The Court charges the Jury that if you are reasonably satisfied from the evidence that the building, the subject of the insurance was being used generally at the time of the fire as a public dance hall or that one of its principal uses was as a public dance hall at said time, then your verdict must not include any damages to the plaintiff for the loss or destruction of said building."

It is well recognized in this jurisdiction that, "The jury is not the sole judge of the sufficiency of evidence to sustain their verdict and the power to review their conclusions in civil actions at law is vested in the trial court in the first instance, and in the Supreme Court on appeal." Franklin Fire Ins. Co. v. Slaton, 240 Ala. 560, 200 So. 564.

The motion for a new trial challenged the judgment under charge "A" on the established principle that when the Court gives a special charge, instructing the jury that, if it be reasonably satisfied of certain facts hypothesized, then its verdict cannot include certain elements of damage, if the facts so hypothesized are proved without dispute or are sustained by the great weight of evidence, a verdict by the jury including the element of damage should be set aside on motion for a new trial. Fleming & Hines v. L. & N. R. Co., 148 Ala. 527, 41 So. 683; Franklin Fire Ins. Co. v. Slaton, 240 Ala. 560, 200 So. 564; Penticost v. Massey, 202 Ala. 681, 81 So. 637; City of Decatur v. Finley, 221 Ala. 101, 127 So. 518.

In Franklin Fire Ins. Co. v. Slaton, 240 Ala. 560, 200 So. 564, 566, the court gave written charges directing a verdict for defendant upon the hypotheses of certain facts set out in the charges. The jury, nevertheless, returned a verdict for the plaintiff and on appeal this court reversed

the trial court, saying: "The oral charge of the court and the special charges given at the request of the parties constituted the law of the case for the guidance of the jury on the trial. Whether or not the charge, thus constituted, correctly states that law is not a matter for jury consideration, and if the verdict of the jury when considered in the light of the court's charge is contrary to the undisputed evidence, or against the great weight of the evidence, on motion for new trial it should be set aside. * * *"

■■ We need to observe that it is essential to orderly administration of the law that the jury obey the instructions of the trial court and if such instructions be erroneous, then remedy of the injured party is by appeal to this court. Fleming & Hines v. L. & N. R. Co., 148 Ala. 527, 41 So. 683; Penticost v. Massey, 202 Ala. 681, 81 So. 637, 638. As has been stated by this court, "a verdict rendered in disregard of such instructions, though the instructions of the court be erroneous, is against the law of the case as decreed by the trial court, and in a proper case 'should be set aside.'" Penticost v. Massey, supra; Talley v. Whitlock, 199 Ala. 28, 73 So. 976.

■ The appellee insists that under the issues the charge in question was too favorable to defendant (appellant) and condenses the evidence as to the use of the property as follows: The premises were occupied as a home by plaintiff, his wife and daughter and girls engaged there as hired help. That he did a mercantile business of $1,500 per month; that the girls danced there with patrons and in so doing earned $160 per month; that the jury was warranted in finding from the several uses and earnings indicated that the sum earned by the girls as against the monthly business was not a principal use of the property, but that such insurable use was the proceeds of the store and the occupancy by plaintiff's family and helpers; that the facts reduced the issue to a decision of the jury that the dancing in the premises was minor and incidental and the residence and business therein was its primary use within the contractual provisions of the policy.

There was no error in refusing the affirmative instruction and no violation of the foregoing rule entered into the trial of the motion for a rehearing under the evidence and the charges illustrated by given charge "A" for defendant.

There was evidence for plaintiff that appellee was occupying the premises as a dwelling and store and that defendant had notice or knowledge as to how the building was occupied and used; that the company's local and general agents both saw dancing going on in the premises and the occupancy and use being made of the building before the policy was issued.

We may observe that the contract of insurance in the instant case was different from the one considered in Fidelity Phenix Fire Ins. Co. v. Raper, 242 Ala. 440, 6 So. 2d 513, where the owner did not occupy the premises and they were not used for the purposes set out in the policy.

■ Under the issues submitted to the jury, it is to be noted that, an agent authorized to solicit and receive applications for insurance and at his discretion to countersign and issue policies of insurance entrusted to him by the company for that purpose must be regarded as a general agent of the company [Tutton v. Liverpool & London & Globe Ins. Co., 237 Ala. 230, 186 So. 551], insofar as to bind insurer by waiver of conditions and warranties inserted in the policy for insurer's benefit. Yorkshire Ins. Co. v. Gazis, 219 Ala. 96, 121 So. 84; Pope v. Glens Falls Ins. Co., 130 Ala. 356, 30 So. 496.

■ It is further declared by this court that if the assured fully and truly discloses his interest, ownership and use of the property to an agent of the company authorized to take applications for insurance, deliver policies and receive premiums, the company will not be permitted to take advantage of an oversight or wrongful act of its agent to void the policy. Commercial Union Assurance Co. v. Ryalls, 169 Ala. 517, 53 So. 754; Phoenix Ins. Co. v. Copeland, 86 Ala. 551, 6 So. 143, 4 L.R.A. 848.

It is further declared by this court that an insurance company's agent, who had acted as "real estate agent for insured's grantor in negotiating sale of property to insured, before policies were written, was advised of defect in insured's title, made issue for jury of insurance company's knowledge of defect and waiver of provision making fire policy void, if insured's interest was less than unconditional and sole ownership, in view of scintilla rule." Girard Fire & Marine Ins. Co. v. Gunn, 221 Ala. 654, 655, 130 So. 180.

■ When the evidence is looked to as to the character and nature of the insur-

ance policy, we are of opinion that this phase of the case was properly submitted to the jury as to waiver of incidental use of the building not within the expressed words of the contract of insurance.

We are of opinion that no reversible error intervened at the trial under the issues specifically outlined by the general and given charges and considered on the motion for new trial.

It results that the judgment of the circuit court is without error and is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.